# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | | |
|---|---|---|
| ED FOSTER, *et al.*, | : | |
| | : | |
| Plaintiffs, | : | Case No. 01-CV-514 |
| | : | |
| v. | : | JUDGE ALGENON L. MARBLEY |
| | : | |
| D.B.S. COLLECTION AGENCY, *et al.*, | : | Magistrate Judge Kemp |
| | : | |
| Defendants. | : | |
| | : | |

## OPINION AND ORDER

### I.  INTRODUCTION

This matter is before the Court on Plaintiffs' Motion for Partial Summary Judgment; (2) Defendant Ward D. Coffman III's ("Coffman"), Motion for Summary Judgment; and (3) Defendant Kathy Dickerson's/D.B.S. Collection Agency's ("Dickerson") Motion for Summary Judgment.[1]

In this case, Plaintiffs seek to recover based on (1) the federal Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.* ("FDCPA"); (2) the Ohio Consumer Sales Practices Act, Ohio Revised Code § 1345.01 *et seq.* ("OCSPA"); (3) common law fraud; (4) the Ohio Pattern of Corrupt Activities Act, Ohio Revised Code § 2923.31 *et seq.* ("OPCA"); and (5) 42 U.S.C. § 1983.  Now, Plaintiffs request partial summary judgment as to Defendants' liability under the FDCPA and the OCSPA.  Defendant Coffman and Defendant Dickerson each request summary judgment on all claims in Plaintiff's Complaint.

---

[1]Defendants Coffman and Dickerson are represented by separate counsel in this matter.

For the following reasons, the Court **GRANTS** in part and **DENIES** in part Plaintiffs'
Motion for Partial Summary Judgment, **DENIES** Coffman's Motion for Summary Judgment,
and **DENIES** Dickerson's Motion for Summary Judgment.

## II.  FACTS

### A.  Background

On April 28, 1982, Mary Jane Slaughter ("Ms. Slaughter") registered the fictitious name
"D.B.S. Collection Agency" (or "D.B.S.") with the Ohio Secretary of State.  Ms. Slaughter
renewed the registration in February 1997, thereby extending the validity of the registration until
February 2002.  Ms. Slaughter then transferred D.B.S. and the right to use that fictitious name to
Michael Slaughter ("Mr. Slaughter") on August 10, 1998.  The transfer was handled by
Coffman, an attorney.  At that time, Mr. Slaughter did not register with the Ohio Secretary of
State the transfer of the right to use the fictitious name "D.B.S. Collection Agency" or his
ownership of the business operating under that name.

After the transfer to Mr. Slaughter, Defendants continued to collect consumer debts under
the name, and on behalf of, D.B.S.  Defendants succeeded in collecting some of those debts by
regularly commencing and maintaining actions for debt collection in various Ohio courts.  After
prevailing in such actions, Defendants collected and executed the judgments that they were
awarded, sometimes through the use of garnishment and attachment of debtors' property.
Plaintiffs allege that Defendants' debt collection activities customarily involved the use of the
mails, telephones, and interstate facilities for data transmission.

On March 1, 1999, Mr. Slaughter transferred D.B.S. and the right to use its fictitious
name to Dickerson.  The transfer was handled by Coffman.  At that time, Dickerson did not

register with the Ohio Secretary of State either the transfer of the right to use the fictitious name "D.B.S. Collection Agency" or her ownership of the business operating under that name.

Plaintiffs allege that after the transfer from Mr. Slaughter, Defendants continued regularly to collect consumer debts under the name "D.B.S. Collection Agency." Just as they had prior to this second transfer, Defendants collected some debts after commencing, maintaining, and prevailing on actions that they filed in various Ohio courts, and then executing on the judgments that they were awarded, including through the regular use of garnishment and attachment.

### 1. Coffman's Representation of D.B.S.

In 1996, Ms. Slaughter sought legal assistance from Coffman in assuring that her sole proprietorship, D.B.S., complied with the FDCPA, the primary federal law regulating her debt collection business. Coffman initially assigned an employee, Mr. Randy Godard, Esq., to advise Ms. Slaughter.

In early 1997, Coffman began signing complaints naming D.B.S. as the sole plaintiff in civil debt collection actions filed against consumers in at least two Zanesville, Ohio area state courts. Until approximately the end of November 2002, Coffman signed the complaints initiating DBS' debt collection lawsuits. During the five-year period of his representation for DBS, Defendant Coffman also appeared for D.B.S. occasionally on bankruptcy, foreclosure, or subrogation matters where D.B.S. was trying to protect or collect a judgment or lien obtained in one of these collection suits. All of the litigation Coffman handled for D.B.S. was consumer collection litigation.

These debt collection suits, mostly filed in Muskingum County, used a standard civil complaint supplemented with a specially prepared "exhibit A," listing the debts D.B.S. claimed were owed it. Both the complaint and "exhibit A" were always drawn up for Coffman's signature by D.B.S. The complaint form Coffman signed to commence these lawsuits for D.B.S. remained substantively unchanged throughout the five-year period that he filed such cases for D.B.S.[2] Between 1997 and November 2002, Coffman recovered judgment for D.B.S. on approximately 500 lawsuits commenced with this standard complaint.

D.B.S. filed debt collection lawsuits routinely as a general business practice. None of D.B.S.'s clients – Orthopaedic Associates, Perry County Family Practice, Muskingum Emergency Physicians, Prime Care, Podiatric Associates, and others – used their own attorneys to collect debts. Instead, they sent their debts to D.B.S. Furthermore, D.B.S. only filed a debt collection lawsuit against a person when that person did not voluntarily pay what D.B.S. claimed was owed it. D.B.S. filed suit specifically to gain the power to garnish the wages of debtors.

While many debtors would pay the amount D.B.S. claimed it was owed after being served with a lawsuit to avoid garnishment, the lawsuits that proceeded would end often in D.B.S. taking default judgment. Prior to 2002, D.B.S. filed many garnishments and it also filed some bank attachments.

D.B.S.'s standard complaint predicated its claims against debtors who would not voluntarily pay what D.B.S. claimed was owed it on six standard allegations:

(1) that D.B.S. was the only plaintiff party;

---

[2]The complaint Defendant Coffman signed in November 2000 to initiate suit by D.B.S. against the named Plaintiffs, Ed and Carla Foster (collectively, the "Fosters"), is an example of the standard complaint and attached "exhibit A."

(2) that D.B.S., a "debt collection agency," had taken assignment of the debts sued on from original creditors;

(3) that the debtor now "owe[s] to Plaintiff [D.B.S.]" all debts listed in the "exhibit A" complaint attachment;

(4) that D.B.S. was itself entitled to demand and recover judgment;

(5) that judgment could be entered against all debtors listed in the complaint jointly, and for all debts listed; and

(6) that the court's judgment should include "[c]ourt filing fees in the amount of Sixty Dollars ($60.00), together with interest at the maximum legal rate from the date of judgment, for costs and for attorney fees."

### 2.  D.B.S.'s Debt Collection Lawsuit Against the Fosters

On November 3, 2000, Defendants commenced a civil action under the name "D.B.S. Collection Agency" against the Fosters jointly in the Zanesville, Ohio Municipal Court to collect consumer debts that the Fosters allegedly owed to various third-party creditors.  Within a few days after receiving service of the complaint by certified mail, Mr. Foster called D.B.S. and spoke to Dickerson.  Mr. Foster alleges that Dickerson told him that D.B.S. had the right to garnish his wages for $600 to $700 bi-weekly and Mrs. Foster's earnings for another $200 to $300 per month.  Mr. Foster explained that such payments would be financially impossible for his family.  He proposed, instead, that the parties arrange a $500 per month payment plan to end the lawsuit.  The Fosters claim that at the end of the telephone conversation, Mr. Foster believed that he and Dickerson had agreed upon a $500 per month payment plan, in exchange for

Dickerson's dismissing the suit she had filed against the Fosters in municipal court.[3]  Pursuant to

Mr. Foster's understanding of the conversation, he paid D.B.S. a $500 installment check on

November 17, 2000.

D.B.S. did not dismiss the civil action filed against the Fosters in municipal court.  On

January 4, 2001, without prior notice to Plaintiffs, Dickerson prepared and filed court documents

on behalf of D.B.S. for a default judgment against the Fosters.[4]  Dickerson did not inform the

court that she had any intervening telephone conversation with Mr. Foster.  The municipal court

judge signed the default judgment entry that Dickerson submitted.

After obtaining the default judgment, Dickerson attached the Fosters' household

checking account by sending the court orders directly to their bank, without providing notice of

such action to the Fosters.  Both Mr. and Mrs. Foster are employed and participate in a direct

deposit program with their employers, such that their paychecks go directly into their bank

accounts.  Consequently, Dickerson's attachment froze the Fosters' cash assets without prior

notice to them.  As a result, the Fosters allege that they were left without funds for basic

necessities, and that outstanding checks that they previously had written were dishonored.  The

Fosters also allege that Dickerson failed to schedule a court hearing on the *ex parte* attachment

---

[3]  Mr. Foster alleges that this arrangement was entered into during the telephone
conversation, despite his allegation that, during the same conversation, Dickerson explicitly told
Mr. Foster that she would not accept the proposed payment plan because D.B.S. had the right to garnish
his wages, as discussed above.

[4]The Fosters assert that they did not file an answer to Dickerson's complaint because they
presumed the case had ended after Mr. Foster's telephone conversation with Dickerson.

of their bank account within the time required by law,[5] thus causing them further economic and emotional loss.[6]

On January 25, 2001, the Fosters notified Defendants that the attachment of their bank account was void *ab initio* and that Dickerson, who regularly signs pleadings in civil actions under the name D.B.S., was illegally practicing law.  The Fosters based their allegations on the fact that the records of the Ohio Secretary of State at that time showed the lawful owner and registrant of D.B.S. to be Mary Jane Slaughter.  Dickerson appeared before the Zanesville Municipal Court on January 25, 2001 to oppose the release of her attachment on the Fosters' bank account.  She informed the court that she owned D.B.S. pursuant to the transfer from Mr. Slaughter in March 1999.  The municipal court discharged the attachment.

On February 23, 2001, the municipal court heard evidence on the Fosters' motion to vacate the default judgment entered against them.  Coffman appeared as counsel for D.B.S., and Dickerson testified on behalf of D.B.S.  During the hearing, Dickerson testified that she had not registered her ownership or use of the name "D.B.S. Collection Agency" with the Secretary of State.

On March 2, 2001, Mr. Slaughter registered the August 10, 1998 transfer of ownership of D.B.S. to him from Ms. Slaughter.  At the same time, Dickerson registered the March 1, 1999 transfer of ownership of the "D.B.S. Collection Agency" business and name to her from Mr. Slaughter.  Both filings and registrations were prepared by Coffman, who thereafter filed copies

---

[5]Dickerson contends that it is the court's responsibility to schedule such a hearing.

[6]The Fosters have not specified how this failure to schedule a court hearing caused them damage that extended beyond the damage caused by the attachment itself.

of the registrations with the municipal court.  The business address listed for D.B.S. on Dickerson's application for registration listed the same address for D.B.S. that had been registered by Ms. Slaughter in 1997.

On March 28, 2001, the municipal court ordered the January 4, 2001 default judgment vacated because, at the time judgment was entered, D.B.S. and Dickerson lacked the legal capacity to commence or maintain a civil action under the name "D.B.S. Collection Agency" due to the lack of proper registration.  The municipal court also recognized that, pursuant to her March 2, 2001 registration, Dickerson now had legal capacity, and stated that the action brought by Dickerson could remain pending in the municipal court.

### B.  Procedural History

Based on the foregoing series of events, the Fosters filed a Complaint with this Court on May 30, 2001 (the "Complaint"), on behalf of themselves and all others similarly situated.  In the Complaint, Plaintiffs sought to recover based on (1) the FDCPA, 15 U.S.C. § 1692 *et seq.*; (2) the OCSPA, Ohio Revised Code § 1345.01 *et seq.*; (3) common law fraud; (4) the OPCA, Ohio Revised Code § 2923.31 *et seq.*; (5) negligence; and (6) 42 U.S.C. § 1983.

In an Order dated March 8, 2002, this Court granted in part and denied in part Defendants D.B.S. and Dickerson's Motion for Judgment on the Pleadings.  Pursuant to that Order, the OCSPA and negligence claims were dismissed.  Pursuant to an Opinion and Order dated March 25, 2002, this Court granted the Plaintiffs' Motion to Certify a Class under Rule 23(b)(3), while denying Plaintiffs' Motion to Certify a Class under Rule 23(b)(2).  The Court certified a class defined as,

> All persons named as a party defendant in any Ohio civil action filed between August 10, 1998 and March 1, 2001, in which "D.B.S. Collection Agency" was the named Plaintiff.

The Court also certified a subclass defined as,

> All such persons as to whom one or more of the defendants did or will engage in any debt collection activity thereto on or after March 2, 2001.

On February 20, 2003, after Defendants' petition to the Sixth Circuit for leave to appeal the class certification Order was denied, this Court granted Plaintiffs' Motion for an Order to Approve and Issue Class Notice.

On March 6, 2003, the Court issued two Orders. The Court granted in part Plaintiffs' Motion for Reconsideration of the March 8, 2002 Opinion and Order on Defendants D.B.S. and Dickerson's Motion for Judgment on the Pleadings, reinstating Plaintiffs' claims under the OCSPA. The Court also granted in part and denied in part Defendant Coffman's Motion for Judgment on the Pleadings, dismissing the negligence claim but not the OCSPA claim as to Defendant Coffman.

In an Opinion and Order dated December 16, 2003, the Court granted Plaintiffs' Motion to Amend the Class Definition. Following that ruling, the Court adopted Plaintiffs' proposed definition for the certified class and subclass:

> All persons named as a party defendant in any Ohio civil action filed with "D.B.S. Collection Agency" as the named plaintiff by alleged assignment at any time prior to November 30, 2002; and/or all such persons as to whom one or more of the defendants did or will engage in any debt collection activity in relation thereto on or after March 2, 2001.

On February 16, 2005, the Fosters moved for partial summary judgment on behalf of themselves and the certified class on the FDCPA and OCSPA claims. Defendant Coffman and Defendant Dickerson each filed memoranda contra, and the Fosters filed a reply memorandum.

On August 15, 2005, Defendant Coffman and Defendant Dickerson each moved for summary judgment on all remaining claims against them in the Complaint.  Plaintiffs filed memoranda contra to each motion for summary judgment.  Furthermore, the Court heard oral argument on these motions on June 5, 2006.  Accordingly, the parties' cross-motions for summary judgment are ripe for decision.

### III.  STANDARD OF REVIEW

The standard of review for cross-motions for summary judgment does not differ from the standard applied when a motion is filed by only one party to the litigation.  *Taft Broad. Co. v. United States*, 929 F.2d 240, 248 (6th Cir. 1991) ("The fact that both parties have moved for summary judgment does not mean that the court must grant judgment as a matter of law for one side or the other; summary judgment in favor of either party is not proper if disputes remain as to material facts.  Rather, the court must evaluate each party's motion on its own merits. . . .") (citations omitted).

Summary judgment is appropriate "[i]f the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  "[S]ummary judgment will not lie if the dispute is about a material fact that is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the non-moving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *see Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (concluding that summary judgment is appropriate when the evidence could not lead the trier of fact to find for the non-moving party).

In evaluating motions for summary judgment, the evidence must be viewed in the light most favorable to the nonmoving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). In the case of cross-motions, the Court must "tak[e] care in each instance to draw all reasonable inferences against the party whose motion is under consideration." *Taft*, 929 F.2d at 248. The movant has the burden of establishing that there are no genuine issues of material fact, which may be accomplished by demonstrating that the non-moving party lacks evidence to support an essential element of its case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Barnhart v. Pickrel, Schaeffer & Ebeling Co.,* 12 F.3d 1382, 1388-89 (6th Cir. 1993). Significantly, in responding to a motion for summary judgment, however, the non-moving party "may not rest upon its mere allegations . . . but . . . must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P.56(e); *see Celotex*, 477 U.S. at 324; *Searcy v. City of Dayton*, 38 F.3d 282, 286 (6th Cir. 1994).

The non-moving party must present "significant probative evidence" to show that there is more than "some metaphysical doubt as to the material facts." *Moore v. Philip Morris Cos.,* 8 F.3d 335, 339-40 (6th Cir. 1993). Furthermore, the mere existence of a scintilla of evidence in support of the non-moving party's position will not be sufficient; there must be evidence on which the jury could reasonably find for the non-moving party. *Copeland v. Machulis*, 57 F.3d 476, 479 (6th Cir. 1995) (citing *Anderson*, 477 U.S. at 252).

### IV. ANALYSIS

The primary legal basis for Plaintiffs' suit against Defendants arises under the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692e and 1692f.[7]  The FDCPA was designed to "eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses."  15 U.S.C. § 1692(e).  Under the FDCPA, a "debt collector" is defined as "[a]ny person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly, or indirectly, debts owed or due or asserted to be owed or due another."  15 U.S.C. § 1692a(6). As a preliminary matter, the Court notes that attorney debt collectors engaged in litigation are subject to the strictures of the FDCPA.  *Heintz v. Jenkins,* 514 U.S. 291, 294 (1995).

Plaintiffs allege that Defendants are debt collectors who violated 15 U.S.C. § 1692e in various ways.  Section 1692e provides in pertinent part:

> A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt.  Without limiting the general application of the foregoing, the following conduct is a violation of this section:
> . . .
> (2)  The false representation of–(A) the character, amount, or legal status of any debt; or (B) any services rendered or compensation which may be lawfully received by any debt collector for the collection of a debt.
> . . .
> (4)  The representation or implication that nonpayment of any

---

[7]Although the Complaint asserts claims under 15 U.S.C. §1692g, which relates to the validation of debts, the Court, in its Opinion dated March 8, 2002, found that Plaintiffs had abandoned their claims under that section of the FDCPA.

> debt will result in the arrest or imprisonment of any person
> or the seizure, garnishment, attachment, or sale of any
> property or wages of any person unless such action is
> lawful . . . .
>
> (5)   The threat to take any action that cannot legally be taken . . . .
> . . . .
> (10)  The use of any false representation or deceptive means to
> collect or attempt to collect any debt or to obtain information
> concerning a consumer.[8]
> . . .
> (13)  The false representation or implication that documents are
> legal process.

15 U.S.C. 1692e.  Plaintiffs also contend that Defendants violated 15 U.S.C. § 1692f, which

states:

> A debt collector may not use unfair or unconscionable means to
> collect or attempt to collect any debt.  Without limiting the general
> application of the foregoing, the following conduct is a violation of
> this section: (1) The collection of any amount . . . unless such
> amount is expressly authorized by the agreement creating the debt
> or permitted by law.

15 U.S.C. § 1692f.[9]

The FDCPA contains a bona fide error defense that can shelter a debt collector from

---

[8]In the Complaint, Plaintiffs based their claim under subsection (10) on an allegation that
Dickerson made a false statement when she stated that she would dismiss the underlying state
court debt collection action against the Fosters if they agreed to pay her $500 monthly
installment payments.  Nevertheless, Plaintiffs do not mention these factual allegations at all in
their Motion for Partial Summary Judgment, and it appears that they are now abandoning any
claim under 15 U.S.C. § 1692e(10).

[9]Plaintiffs assert that the same factual background forms the basis for Plaintiffs' claims
under 15 U.S.C. § 1692e(2) and (5) (false and deceptive acts), 15 U.S.C. § 1692f (unfair and
unconscionable acts), and Ohio Revised Code § 1345.02 (representing that certain remedies are
available that are not).

liability arising out of actions which would otherwise violate the statute. 15 U.S.C. § 1692k(c).

It provides:

> A debt collector may not be held liable in any action brought under
> this subchapter if the debt collector shows by a preponderance of
> evidence that the violation was not intentional and resulted from a
> bona fide error notwithstanding the maintenance of procedures
> reasonably adapted to avoid any such error.

15 U.S.C. § 1692k(c). Thus, under this defense, a debt collector cannot be held liable under the

FDCPA if it shows by a preponderance of the evidence the following three elements:  (1) the

violation was not intentional; (2) the violation resulted from a bona fide (or good faith) error; and

(3) the violator maintained procedures reasonably adapted to avoid any such error. *See* 15 U.S.C.

§ 1692k(c); *Edwards v. McCormick*, 136 F. Supp. 2d 795, 800 (S.D. Ohio 2001).  In this case,

both Defendants claim that the protection offered by the bona fide error defense shields them

from any liability to Plaintiffs.

Plaintiffs have also brought suit under the OCSPA, the Ohio version of the FDCPA,

common law fraud, the OPCA, and 42 U.S.C. § 1983.  These additional claims will be discussed

in more detail below; however, Defendants, in defending themselves against all of the claims,

have asserted many of the same defenses.  Thus, before turning to the merits of the individual

claims, the Court will address several of Defendants' threshold arguments.[10]  For all affirmative

---

[10]The Court notes that it is not persuaded by Dickerson's argument that she cannot be
held personally liable for any of the actions of "D.B.S. Collection Agency" that occurred before
March 1, 1999, the date she purchased the business.  In making this argument, Dickerson cites
only one case, *Elizabeth Gamble Deaconess Home Ass'n v. Turner Constr. Co.*, 526 N.E.2d
1368 (Ohio C.P. 1986), for the proposition that a successor sole proprietor cannot be held liable
for the wrongful conduct of a predecessor sole proprietor.  *Elizabeth* does not apply here to
immunize Dickerson from liability because she acquired all of the business related assets of
"D.B.S. Collection Agency" when she purchased the business, and she merely continued D.B.S.'
debt collection business.

defenses, defendants have the burden of pleading and proving each element. *See Horton v. Potter*, 369 F.3d 906, 911 (6th Cir. 2004).

### A. Jurisdictional Challenges

Before they dispute Plaintiffs' substantive claims in this case, Defendants contend that they are entitled to prevail based upon procedural grounds. Defendants Coffman and Dickerson both claim that they are entitled to a judgment in this case due to claim preclusion, the *Rooker-Feldman* doctrine, and various statutes of limitations. Additionally, Defendant Dickerson asserts that she is entitled to issue preclusion in this case.

### 1. Preclusion Doctrines

Federal courts traditionally adhere to the preclusion doctrines of collateral estoppel (hereafter, "issue preclusion") and *res judicata* (hereafter, "claim preclusion"). "Issue preclusion refers to the effect of a judgment in foreclosing relitigation of a matter that has been litigated and decided." *Migra v. Warren City School Dist. Bd. of Educ.*, 465 U.S. 75, 77 n.1 (1984). Similarly, "[c]laim preclusion refers to the effect of a judgment in foreclosing litigation of a matter that never has been litigated because of a determination that it should have been advanced in an earlier suit." *Id*. In this case, Dickerson argues that she is entitled to issue preclusion and claim preclusion on all of Plaintiffs' claims, and Defendant Coffman argues that he is entitled to claim preclusion on all of Plaintiffs' claims.

"[W]hen asked to give preclusive effect to a prior state court judgment, a federal court must look to the law of the rendering state to determine whether and to what extent that prior judgment should receive preclusive effect in a federal action." *Hapgood v. City of Warren*, 127 F.3d 490, 493 (6th Cir. 1997) (citing *Migra*, 465 U.S. at 81).

a.  Issue preclusion

To support a claim of issue preclusion, a party must prove that: (1) the precise issue in the current proceeding has been raised in a prior proceeding; (2) the issue was actually litigated; and (3) the prior court's determination on that issue was necessary to the outcome.  *Spilman v. Harley*, 656 F.2d 224, 228 (6th Cir. 1981); *see also Thompson v. Wing*, 637 N.E.2d 917, 923 (Ohio 1994).

According to Dickerson, issue preclusion is proper here because in all of the complaints D.B.S. filed against Plaintiffs in state court, D.B.S. alleged that: (1) it was the "proper plaintiff party" and (2) it had taken an assignment of the debt.  Thus, Defendant Dickerson argues that issue preclusion bars all of Plaintiffs' claims which challenge D.B.S.'s capacity or standing to bring the underlying state court claims.  The Fosters respond that the "proper plaintiff party" and assignment issues were not "actually litigated" in the underlying state court cases, and therefore, issue preclusion is not appropriate here.

Speaking to the "actually litigated" prong of issue preclusion, the U.S. Supreme Court adopted the Restatement view, holding:

> It is the general rule that issue preclusion attaches only '[w]hen an issue of fact or law is actually litigated and determined by a valid and final judgment, and the determination is essential to judgment.' Restatement (Second) of Judgments § 27, p. 250 (1982).  'In the case of a judgment entered by confession, consent, or *default*, none of the issues is actually litigated.  Therefore, the rule of this Section [describing issue preclusion's domain] does not apply with respect to any issue in a subsequent action.  *Id*., comment e, at 257.

*Arizona v. California*, 530 U.S. 392, 414 (2000) (emphasis added).

Most, if not all, of the class members of the Plaintiff class had default judgments entered against them in the debt collection lawsuits D.B.S. filed against them.  Under the rule set forth in

*Arizona v. California*, *supra*, those default judgments do not satisfy the "actually litigated" element of issue preclusion simply because D.B.S. alleged certain "facts" in the state court complaints.[11]  Moreover, D.B.S.'s debt collection action against the Fosters is still pending before a municipal court for Zanesville, Ohio, so there can be no issue preclusion to bar the claims asserted by them.

Because Defendant Dickerson failed to prove that the "proper plaintiff party" and assignment issues were "actually litigated" in the underlying state court cases, issue preclusion is not appropriate here.

### b. Claim preclusion

Under Ohio law, claim preclusion has four elements: (1) a prior final, valid decision on the merits by a court of competent jurisdiction; (2) a second action involving the same parties, or their privies, as the first; (3) a second action raising claims that were or could have been litigated in the first action; and (4) a second action arising out of the transaction or occurrence that was the subject matter of the previous action.  *Hapgood*, 127 F.3d at 493 (referencing *Grava v. Parkman Township*, 653 N.E.2d 226, 229 (Ohio 1995)).

Plaintiffs argue that claim preclusion is inapplicable here for two reasons: (1) Defendants Dickerson and Coffman cannot prove the second element of claim preclusion because they were not named parties in the underlying state court actions; and (2) Defendants cannot prove the fourth element of claim preclusion because the evidence required to prove Plaintiffs' claims in

---

[11]Not surprisingly, Defendant Dickerson does not cite any cases that state a default judgment is considered "actual litigation" for issue preclusion purposes.

this action is different than the evidence that would have been presented in the underlying state court actions.[12]

As a general rule, in order for the principle of claim preclusion to apply, "the parties to the subsequent action must be identical to those of the former action or be in privity with them." *Johnson's Island, Inc. v. Bd. of Township Tr. of Danbury Township*, 431 N.E.2d 672, 674–75 (Ohio 1982). In the context of preclusion issues, "[o]ne is in privity with another if he/she succeeds to an estate or an interest formerly held by the other." *Lennon v. Neil*, 139 Ohio App. 3d 437, 445 (11th Dist. 2000) (citation omitted). Defendants Dickerson and Coffman are not identical to the plaintiff named in the underlying state court cases,[13] and neither of them has offered sufficient proof that they are in privity with D.B.S., the named plaintiff in those state court actions.[14] Therefore, claim preclusion is inapplicable as to Defendants Dickerson and Coffman because they have failed to prove the second element of that defense.

---

[12]The Fosters also argue that all Defendants fail to prove the first element of claim preclusion against them because the state court vacated the default judgment against the Fosters and that action is still pending, so there is no "prior final, valid decision on the merits by a court of competent jurisdiction."
  While the Court finds this argument persuasive, it notes that the other class members who did not have their default judgments vacated in state cannot argue this element.

[13]Plaintiffs appear to concede that Defendant D.B.S. satisfies the second prong of the claim preclusion inquiry because D.B.S. was the named plaintiff in all of the underlying debt collection cases.

[14]During oral argument, Dickerson argued that she is in privity with D.B.S. because she is the sole proprietor for D.B.S. This argument is unpersuasive because of the rule of differing capacities. The rule of differing capacities provides that "[a] party appearing in an action in one capacity, individual or representative, is not thereby bound by or entitled to the benefits of the rules of res judicata in a subsequent action in which he appears in another capacity." *Mitchell v. Chapman*, 343 F.3d 811, 823 (6th Cir. 2003). In this case, Dickerson is being sued in her personal capacity, whereas in the underlying debt collection actions, she was litigating in a representative capacity for D.B.S.

The fourth element Defendants must prove to establish claim preclusion here is that this federal action arises out of the same transaction or occurrence that was the subject matter of the underlying state actions.  *See Hapgood*, 127 F.3d at 493.  The Ohio Supreme Court has defined the term "transaction" as "a common nucleus of operative facts."  *Grava*, 653 N.E.2d at 229.  In this case, Defendants have not indicated that this federal action and the underlying debt collection cases arise out of a common nucleus of operative facts.  All of the underlying debt collection cases were actions on account, which addressed the class members' alleged liability to repay certain debts.  Plaintiffs' federal court claims, on the other hand, address the allegedly unlawful misrepresentations Defendants made during the process of collecting such debts.  Plaintiffs, in this case, are not challenging the amounts they owed to their creditors, which would implicate claim preclusion, but rather challenge the capacity of Defendants to bring debt collection lawsuits against them and the practices Defendants employed when they attempted to collect those debts.  Therefore, this matter arises out of a different set of operative facts than did the underlying state court cases, and as such, Defendants are not entitled to claim preclusion. *See id*.

## 2.  The *Rooker-Feldman* Doctrine

Defendant Dickerson argues that the *Rooker-Feldman* doctrine precludes all of Plaintiffs' claims against them in this case.  The *Rooker-Feldman* doctrine originates from two United States Supreme Court decisions.

> In *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 44 S. Ct. 149, 68 L. Ed. 362 (1923), the Supreme Court explained that lower federal courts lack jurisdiction to hear appeals from state court judgments because the Supreme Court alone has that power.  The Court broadened this rule in *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 486, 483 n.16, 103 S. Ct. 1303, 75 L. Ed. 2d

> 206 (1983), by holding that lower federal courts lack jurisdiction to
> hear 'challenges to state court decisions in particular cases arising
> out of judicial proceedings' or to decide questions 'inextricably
> intertwined' with state court judgments.

*Todd v. Weltman, Weinberg & Reis, Co., L.P.A.*, 348 F. Supp.2d 903, 910 (S.D. Ohio 2004).

The Supreme Court recently held that *Rooker-Feldman* "is confined to cases of the kind from

which the doctrine acquired its name: cases brought by state-court losers complaining of injuries

caused by state-court judgments rendered before the district court proceedings commenced and

inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi*

*Basic Indus. Corp.*, 544 U.S. 280, 284 (2005).  Moreover, "[i]f a federal plaintiff present[s] some

independent claim, albeit one that denies a legal conclusion that a state court has reached in a

case to which he was a party . . . , then there is jurisdiction and state law determines whether the

defendant prevails under principles of preclusion."  *Id.* at 293.

The Seventh Circuit's decision in *Long v. Shorebank Development Corp.*, 182 F.3d 548

(7th Cir. 1999), is instructive.  In that case, the plaintiff claimed, *inter alia*, that a creditor

violated the FDCPA's prohibitions against falsely representing the character, amount, and legal

status of a debt by presenting her with notice and a complaint that falsely stated that she owed

the creditor money.  Although the plaintiff there also challenged the correctness of the eviction

order that was issued based on that same complaint, the Seventh Circuit held that the plaintiff's

FDCPA claim based on the false representations to her was not barred by *Rooker-Feldman*

because the alleged FDCPA violations were "independent of and complete prior to the entry of

the eviction order."  *Id.* at 556.

In this case, as discussed in Section IV.A.1.b. of this Opinion, *supra*, Plaintiffs are not

attempting to appeal their state court judgments in federal district court.  Plaintiffs' alleged

injuries here are not the result of the state court judgments themselves, but rather from the allegedly illegal practices Defendants used to obtain those state court judgments.  Plaintiffs' claims arose prior to the various entries of default judgment in state court, and, like the plaintiff's FDCPA claims in *Long*, they are separate and distinct from those judgments.  *See Todd*, 348 F. Supp.2d at 910–11.  Because Plaintiffs' claims in federal court are independent of the state court judgments, the *Rooker-Feldman* doctrine does not bar Plaintiffs' claims here.

### 3.  Statute of Limitations

In addition to the jurisdictional challenges above, Defendants allege that their liability in this case is limited because certain class members' claims are barred by the statute of limitations. Referencing the date upon which Plaintiffs filed the Complaint in this case, May 31, 2001,

Defendants claim that the statute of limitations bars many of the class members' claims pursuant to the FDCPA,[15] the OCSPA,[16] common law fraud,[17] and 42 U.S.C. § 1983.[18]

Defendants' brief recitation of dates and applicable statutes of limitations is not sufficient to satisfy its burden in proving this affirmative defense. Defendants incorrectly assume that the filing dates for their underlying state court complaints were the last actionable events, and that the statute of limitations began to run on those filing dates. Defendants actions after the state courts' judgments, however, such as collecting on the allegedly invalid state court judgments or garnishing class members' wages, could also be actionable events that are relevant for statute of

---

[15]FDCPA claims have a one-year statute of limitations. *See* 15 U.S.C. § 1692k(d) ("An action to enforce any liability created by this subchapter may be brought in any appropriate United States district court without regard to the amount in controversy, or in any other court of competent jurisdiction, within one year from the date on which the violation occurs."). Defendants claim that 497 of the underlying state court complaints against class members were filed before May 30, 2000, so those class members' FDCPA claims are time-barred.

[16]OCSPA claims have a two-year statute of limitations. *See* O.R.C. § 1345.10(C) ("An action under sections 1345.01 to 1345.13 of the Revised Code may not be brought more than two years after the occurrence of the violation which is the subject of suit[.]"). Defendants claim that 317 of the underlying state court complaints against class members were filed before May 30, 1999, so those class members' OCSPA claims are time-barred.

[17]Common law fraud claims have a four-year statute of limitations. *See* O.R.C. § 2305.09(C) ("Any action for [relief on the ground of fraud] shall be brought within four years after the cause thereof accrued[.]"). Defendants claim that 42 of the underlying state court complaints against class members were filed before May 30, 1997, so those class members' common law fraud claims are time-barred.

[18]42 U.S.C. § 1983 claims have a two-year statute of limitations. *See Kuhnle Bros. v. County of Geauga*, 103 F.3d 516, 519 (6th Cir. 1997) (holding that "the limitations period for § 1983 actions arising in Ohio is the two-year period found in Ohio Rev. Code § 2305.10" and that "the limitations period starts to run 'when the plaintiff knows or has reason to know of the injury which is the basis of his action'") (internal citations omitted). Defendants claim that 317 of the underlying state court complaints against class members were filed before May 30, 1999, so those class members' § 1983 claims are time-barred.

limitations purposes. Defendants fail to explain to the Court why those are not actionable events for the relevant statutes of limitations.

Moreover, the Court finds that Plaintiffs' FDCPA claims are subject to equitable tolling and estoppel. To determine whether equitable tolling is appropriate, "the basic inquiry is whether congressional purpose is effectuated by tolling the statute of limitations in given circumstances." *Jones v. TransOhio Sav. Ass'n*, 747 F.2d 1037, 1040 (6th Cir. 1984) (quoting *Burnett v. New York Central R.R. Co.*, 380 U.S. 424, 427 (1965)). In applying that rule to a similar federal statute, the Truth in Lending Act ("TILA"), the Sixth Circuit held:

> For application of the doctrine of fraudulent concealment, the one year [statute of limitations] period will begin to run when the borrower discovers or had reasonable opportunity to discover the fraud involving the complained of TILA violation. [citation omitted]. To conclude otherwise is to accede to the machinations of those who would hope to thwart Congress' purpose and the ability of federal courts to ensure that purpose's fruition: the prevention of fraud in consumer credit transactions.
> . . .
> To summarize, we hold that the statute of limitations for actions brought under 15 U.S.C. § 1640(e) is subject to equitable tolling in appropriate circumstances, and that for application of the doctrine of fraudulent concealment, the limitations period runs from the date on which the borrower discovers or had reasonable opportunity to discover the fraud involving the complained of TILA violation.

*Jones*, 747 F.2d at 1041, 1043. For the same reasons the court permitted equitable tolling of the plaintiffs' TILA claims in *Jones*, this Court finds equitable tolling appropriate here. Defendants have not proved when any of the class members discovered or had reasonable opportunity to discover Defendants' alleged misrepresentations.[19]

---

[19]This finding is also relevant as to Defendants' statute of limitations defense regarding Plaintiffs' common law fraud claims. *See Burr v. Bd. of County Comm'rs of Stark County*, 491 N.E.2d 1101, 1108 (Ohio 1986) ("[A] cause of action for the tort of fraud must be brought within

Because Defendants fail to identify with adequate specificity the appropriate time when the statute of limitations began to run on the class members' claims, the Court finds that they have not satisfied their burden of proving that any of Plaintiffs' claims are time-barred.

### B.  FDCPA Claims

#### 1.  1692e

Plaintiffs seek summary judgment on each of their various FDCPA claims. Section 1692e of the FDCPA provides, *inter alia*, that:

> [a] debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:
> . . . .
> (2)  The false representation of–
>    (A)  the character, amount, or legal status of any debt; or
>    (B)  any services rendered or compensation which may be lawfully received by any debt collector for the collection of a debt.
> . . .
> (5)  The threat to take any action that cannot legally be taken or that is not intended to be taken . . . .

15 U.S.C.A. § 1692e.

According to Plaintiffs, Defendants violated § 1692e in four distinct ways.  First, Plaintiffs claim that Defendants regularly commenced and maintained actions in municipal court

---

four years of the time the cause accrued.  The cause does not accrue until the fraud and wrongdoer are actually discovered.").

against the class members under the name "D.B.S. Collection Agency" when they did not have the legal capacity to do so.

Second, Plaintiffs argue that Defendants violated 1692e(2)(B) when they stated in the state court complaints that they had a right to recover attorney fees.

Third, Plaintiffs allege that Defendants violated 1692e(2)(A) and (B) by falsely representing the character, amount, or legal status of debt.  In particular, Plaintiffs claim that Defendants filed debt collection actions against individuals without investigating whether they actually owed debts.

Fourth, Plaintiffs allege that Defendants' debt collection practices constituted the unauthorized practice of law because D.B.S. never owned valid assignments from original creditors under Ohio law.

In determining whether a debt collection practice is deceptive or misleading, that practice "must be viewed objectively from the standpoint of the 'least sophisticated consumer.'"  *Gionis v. Javitch, Block & Rathbone*, 405 F. Supp.2d 856, 864 (S.D. Ohio 2005) (Holschuh, J.) (quoting *Taylor v. Perrin, Landry, deLaunay & Durand*, 103 F.3d 1232, 1236 (5th Cir. 1997)); *see also Edwards*, 136 F. Supp.2d at 798 (citing *Smith v. Transworld Sys., Inc.*, 953 F.2d 1025, 1028 (6th Cir. 1992)).  This standard "protects all consumers, the gullible as well as the shrewd."  *Gionis*, 405 F. Supp.2d at 864 (citing *Clomon v. Jackson*, 988 F.2d 1314, 1318 (2nd Cir. 1993)).

### a.  Legal capacity

Plaintiffs' contention that the Defendants lacked the capacity to bring suit as D.B.S. between August 10, 1998 and March 1, 2001 rests upon the interplay between various provisions of the Ohio Revised Code.  Under § 1329.01, any person doing business in the state of Ohio

under a fictitious name must register the use of that name with the Secretary of State within

thirty days of the first use of the name.  OHIO REV. CODE § 1329.01.  No person doing business

under a fictitious name may commence or maintain a civil action in any Ohio court under the

fictitious name without first complying with the requirements of § 1329.01.  OHIO REV. CODE

§1329.10(B).[20]  Finally, an assignment of the right to use a fictitious name must be recorded with

the Secretary of State.  OHIO REV. CODE § 1329.06.[21]  Thus, Plaintiffs maintain that Defendants

did not have the legal capacity to sue under the name "D.B.S. Collection Agency" during the

class period because the fictitious name had not been properly assigned.

Defendants' first defense for this claim is that the Court does not have jurisdiction over

the issue because the preclusion doctrines bar these claims in federal court.[22]  Second,

Defendants assert the bona fide error defense, which the Court addresses in Section IV.C., *infra*.

Nevertheless, Defendants concede that Dickerson never registered her ownership interest in the

fictitious name "D.B.S. Collection Agency" with the Ohio Secretary of State[23] before March 2,

---

[20]Section 1329.10 provides that "[n]o person doing business under a . . . fictitious name shall commence or maintain an action in the . . . fictitious name in any court in this state or on account of any contracts made or transactions had in the . . . fictitious name until it has first complied with section 1329.01 of the Revised Code."  OHIO REV. CODE §1329.10(B).

[21]Section 1329.06 states, in relevant part, that "[a]ny . . . fictitious name and its registration or report shall be assignable by an instrument in writing duly executed and may be recorded with the secretary of state . . . , who, recording the assignment, shall issue in the name of the assignee a new certificate for the remainder of the term of the registration or report or the last renewal thereof."  OHIO REV. CODE § 1329.06.

[22]The Court rejects this defense for the reasons set forth in Section IV.A., *supra*.

[23]Section 1329.01(D) of the Ohio Revised Code provides:

> Any person who does business under a fictitious name and who has
> not registered and does not wish to register the fictitious name as a
> trade name or who cannot do so because the name is not available

2001.  Despite this oversight, Dickerson and Coffman regularly commenced and maintained debt collection lawsuits, attachments, garnishments, and judgment liens in Ohio courts against class members, for and in the name of "D.B.S. Collection Agency."  Defendants violated § 1692e when they commenced and maintained debt collection lawsuits in state court against the class members, even though they did not have the legal capacity to do so.  Therefore, the Court **GRANTS** Plaintiffs' Motion for Partial Summary Judgment on this issue.

---

for registration shall report the use of the fictitious name to the secretary of state, on a form prescribed by the secretary of state.

OHIO REV. CODE § 1329.01(D).  Furthermore, section 1329.01(E) states, "The report of use of a fictitious name shall be signed by the user or by an authorized representative of the user."  OHIO REV. CODE § 1329.01(E).

b.  Attorney fees demand

Plaintiffs' assert that Defendants' state court complaints against class members unlawfully demand a right to attorney's fees, in violation of § 1692e(2)(B).  Defendants assert the bona fide error defense for this claim, which is discussed in Section IV.C., *infra*.

Under Ohio law, creditors are not permitted to recover attorney fees incurred in connection with debt collection suits involving "personal, family, or household" debt.  *See* OHIO REV. CODE § 1301.21; *Gionis*, 405 F. Supp.2d at 862.  In *Gionis*, the court granted summary judgment to the defendants on the plaintiffs' claim under § 1692e(2)(B) because the state court complaint, itself, did not request an award of attorney fees.  405 F. Supp. 2d at 865.  That court granted summary judgment for the plaintiff, however, on her § 1692e(5) claim because the defendant had attached an affidavit to the complaint that stated the defendant was entitled to attorney fees.  *Id*. at 866–69.

This case differs slightly from *Gionis* because here, Defendants did seek relief for attorney fees in the underlying complaints.  Defendants concede this.  In fact, in its prayer for relief, the state court complaints' form language explicitly states, "WHEREFORE, Plaintiff prays for judgment in an amount equal to the total balance of accounts listed in Exhibit "A," plus Court filing fees in the amount of Sixty Dollars ($60), together with interest at the maximum legal rate from the date of judgment, for costs, *attorney fees*, and all other equitable relief this Court may deem just and proper." (emphasis added).  From the perspective of the "least sophisticated consumer," this statement constitutes an absolute entitlement to attorney fees, even though such fees are not recoverable under Ohio law.  *See* OHIO REV. CODE § 1301.21; *Gionis*, 405 F. Supp. 2d at 862.  Therefore, Defendants' standard request for attorney fees in Ohio debt

collection action complaints constitutes a violation of 15 U.S.C. § 1692e(2)(B), and the Court **GRANTS** Plaintiffs' Motion for Partial Summary Judgment on this issue.

c.  Holding spouses jointly liable

Plaintiffs argue that Defendants violated 15 U.S.C. § 1692e(2) when they filed debt collection actions against a debtor's spouse when the spouse did not have a legal obligation to pay those debts.  Defendants counter that they were entitled to seek damages from spouses jointly under *Ohio State Univ. Hosp. v. Kinkaid*, 549 N.E.2d 517 (Ohio 1990).[24]

In *Kinkaid*, the Ohio Supreme Court found that Ohio Revised Code section 3103.03 made a non-cosigner wife liable for the payment of hospital and medical expenses incurred by her husband before his death when, at the husband's death, his assets were insufficient to pay such expenses.  *Kinkaid*, 549 N.E.2d at 518–19.  In *Edwards v. McCormick*, this Court denied the plaintiff's motion for summary judgment against an attorney debt collector on a similar claim because the defendant had given uncontroverted deposition testimony that he had "specifically demanded and received assurances from [the original creditor] that [the plaintiff] was indeed a financially responsible party."  136 F. Supp. 2d at 804.  The Court found that the defendant was entitled to the bona fide error defense because he had reasonably relied upon the creditor's inaccurate information.  *Id*.

---

[24]Defendant Dickerson also argues that this claim is not properly before the Court because Plaintiff failed to plead it expressly in the Complaint.  The Court disagrees.  Rule 8(a) of the Federal Rules of Civil Procedure merely requires a complaint to state a "short and plain statement of the ground upon which the court's jurisdiction depends," "a short and plain statement of the claim," and "a demand for judgment."  Fed. R. Civ. P. 8(a); *see also Swierkiewicz v. Sorema N.A.* 534 U.S. 506, 514 (2002) ("The liberal notice pleading of Rule 8(a) is the starting point of a simplified pleading system, which was adopted to focus litigation on the merits of a claim.").  The Court finds that the Complaint meets the liberal notice pleading standard with respect to this claim.

The facts of this case are distinguishable from those in *Kinkaid* and *Edwards*.  Unlike the creditor in *Kinkaid*, Defendants never established that any of the actual debtors were unable to pay their own debt.  *See Kinkaid*, 549 N.E.2d at 517 ("Where a husband is unable to provide for his own support, pursuant to R.C. 3103.03 a wife must aid in the support of her husband to the extent that she is able.").  Moreover, *Kinkaid* applies only to necessary debts,[25] and Defendants offer no explanation for their standard practice of holding debtors and their spouses jointly liable for non-medical debts.  *Edwards* is inapplicable because, unlike the defendant in that case, the evidence suggests that Defendants did not specifically demand or receive assurances from the original creditors about whether they could hold a debtor's spouse jointly liable for a debt before they proceeded with the debt collection action;[26] rather, it appears that Defendants simply presumed spousal liability in every case without resorting to any further investigation.[27]  That practice constitutes a violation of 15 U.S.C. § 1692e(2).  Thus, the Court **GRANTS** Plaintiffs' Motion for Partial Summary Judgment on this issue.

### d.  Improper assignments of debt

Section 1692e(5) of the FDCPA prohibits debt collectors from threatening or taking legal action that cannot be taken legally.  15 U.S.C.A. § 1692e(5).  Plaintiffs claim that Defendants violated § 1692e(5) when they threatened to and did file debt collection lawsuits against the class

---

[25]*Kinkaid* holds that medical expenses are necessary *per se*.  *Id*. at 519.

[26]With respect to the Fosters, Defendants proceeded with a debt collection action against the Fosters jointly for a debt Ms. Foster owed to Orthopedic Associates, Inc.  According to Orthopedic Associates, Inc.'s records, Ms. Foster was the only account responsible person, but Defendants initiated a lawsuit against both Ms. Foster and Mr. Foster, seeking joint liability.

[27]In fact, Defendant Coffman conceded during his deposition that, upon signing D.B.S.' debt collection complaints naming spousal defendants, he did not even know who legally owed the debt.

members because Defendants had not been assigned the underlying debts in accordance with

Ohio Revised Code § 1319.12(C).[28] Dickerson alleges that this claim is not properly before the

---

[28]Section 1319.12(C) states:

No collection agency shall commence litigation for the collection of an assigned account, bill, or other evidence of indebtedness unless it has taken the assignment in accordance with all of the following requirements:

(1) The assignment was voluntary, properly executed, and acknowledged by the person transferring title to the collection agency.

(2) The collection agency did not require the assignment as a condition to listing the account, bill, or other evidence of indebtedness with the collection agency for collection.

(3) The assignment was manifested by a written agreement separate from and in addition to any document intended for the purpose of listing the account, bill, or other evidence of indebtedness with the collection agency. The written agreement shall state the effective date of the assignment and the consideration paid or given, if any, for the assignment and shall expressly authorize the collection agency to refer the assigned account, bill, or other evidence of indebtedness to an attorney admitted to the practice of law in this state for the commencement of litigation. The written agreement also shall disclose that the collection agency may consolidate, for purposes of filing an action, the assigned account, bill, or evidence of indebtedness with those of other creditors against an individual debtor or co-debtors.

(4) Upon the effective date of the assignment to the collection agency, the creditor's account maintained by the collection agency in connection with the assigned account, bill, or other evidence of indebtedness was cancelled.

OHIO REV. CODE § 1319.12(C).

-31-

Court because Plaintiffs did not identify it in the Complaint.[29]  Defendant Coffman asserts the

bona fide error defense, which the Court addresses in Section IV.C., *infra*.

In Ohio, a collection agency engages in the unauthorized practice of law when it

prosecutes claims in a court of justice on behalf of creditors.  *Med Controls, Inc. v. Hopkins*, 573

N.E.2d 154, 155 (Ohio Ct. App. 8th Dist. 1989).  In explaining this concept, the *Hopkins* court

stated:

> The collection agency practiced law by interposing itself as an
> intermediary between a licensed attorney and a client.  In effect, the
> collection agency becomes the client of the attorney when it is not.
> This creates an absence of the attorney-client relationship that
> diverts the interest of the attorney from the entity whose real
> interests are at stake in the proceedings, thereby giving rise to a
> possible conflict of interest.

*Id*.  A collection agency may file suit in its own name only when it has become the legal and

equitable owner of the debt through an assignment that satisfies all of the requirements set forth

in Ohio Revised Code § 1319.12.  *See* OHIO REV. CODE § 1319.12(C).  The collection agency

need not adhere to the assignment requirements in § 1319.12(C) if it restricts its collections

methods to exclude legal action.  *See* OHIO REV. CODE § 1319.12(B).

When a collection agency engages in the unauthorized practice of law, it constitutes an

"action that cannot legally be taken" within the meaning of the FDCPA.  *See, e.g., Poirier v.

Alco Collections, Inc.*, 107 F.3d 347 (5th Cir. 1997) (holding that collections agency violated §

1692e(5) when it engaged in the unauthorized practice of law by instituting a lawsuit against a

---

[29]The Court, again, refers to the liberal notice pleading standard set forth in Rule 8(a) of
the Federal Rules of Civil Procedure.  Plaintiffs meet this standard with respect to this claim, and
the Court further notes that Defendants were placed on notice of this claim when the Court
granted Plaintiffs' Motion to Amend the Class Definition in the Opinion dated December 16,
2003.

debtor since the debt had not been properly assigned); *Marchant v. U.S. Collections West, Inc.*, 12 F. Supp. 2d 1001, 1004–06 (D. Ariz. 1998); *Martinez v. Alburquerque Collection Services, Inc.*, 867 F. Supp. 1495, 1503 (D. N.M. 1994).

In this case, the complaints Defendants filed against the class members during the class period all represented that "D.B.S. Collection Agency" was entitled to sue and recover judgment in its own name for the debts listed. Each complaint represented that the debts listed were owed to "D.B.S. Collection Agency" under a valid assignment from the original creditor. Defendants' deposition testimony and the actual "assignment" forms themselves, however, indicate that Defendants did not adhere to the requirements of Ohio Revised Code § 1319.12(C).[30] Because it never obtained ownership of the debts through an assignment from the original creditors that complied with the requirements in Ohio Revised Code § 1319.12(C), D.B.S. Collection Agency was not authorized to litigate under its own name. Any debt collection action filed by "D.B.S. Collection Agency" against a class member during the class period constitutes unauthorized practice of law, and as such, a violation of 15 U.S.C. § 1692e(5). Therefore, the Court **GRANTS** Plaintiffs' Motion for Partial Summary Judgment on this issue.

### 2. 1692f

Plaintiffs argue that, by their actions, Defendants routinely violated 15 U.S.C. § 1692f, which, in relevant part, states:

---

[30]For example, the assignment forms do not identify the debt or debts assigned; they do not indicate that D.B.S. Collection Agency paid the original creditor any consideration for the assigned debt; they do not transfer any title of any debt to D.B.S. Collection Agency; and Paragraph 5 of the form merely "grants to the Assignee the full power and authority to bill and collect the aforesaid Debt(s)."

Additionally, Defendants Coffman and Dickerson each gave deposition testimony that D.B.S. Collection Agency didn't have full and complete ownership of any debts.

> A debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:
>
>> (1)     The collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation)  unless such amount is expressly authorized by the agreement creating the debt or permitted by law.

15 U.S.C. § 1692f.[31]

In Ohio, there is no right to recover court costs or statutory interest except for when a court enters a lawful judgment in an action validly commenced under law.  *See* OHIO REV. CODE § 2335.19.  Any debt collector's attempt to recover court costs in the absence of a valid judgment constitutes a violation of 15 U.S.C. § 1692f.  *See Shula v. Lawent*, 359 F.3d 489, 491 (7th Cir. 2004); *Veach v. Sheets*, 316 F.3d 690, 692 (7th Cir. 2003) (holding that debt collector violated FDCPA when it held debtor liable for court costs that had not yet been awarded); *Duffy v. Landberg*, 215 F.3d 871, 873–74 (8th Cir. 2000).

In the present case, Defendants standard debt collection complaint seeks payment of court costs, filing fees, and interest in connection with the lawsuit.[32]  Because Defendants never

---

[31]As an initial matter, this Court has found in a previous case, that "§ 1692f serves a backstop function, catching those 'unfair practices' which somehow manage to slip by §§ 1692d &1692e.  That is, '§ 1692f allows the court to sanction improper conduct that the FDCPA fails to address specifically.'"  *Edwards*, 136 F. Supp.2d at 806 (quoting *Adams v. Law Offices of Stuckert & Yates*, 926 F. Supp. 521, 528 (E.D. Pa. 1996)).  Thus, the Court hereby dismisses Plaintiffs § 1692f claims to the extent that they have been squarely addressed by § 1692e.  Accordingly, Plaintiffs' only surviving claim under § 1692f relates to Defendants' demand for court costs and interest in the underlying state court complaints.

[32]The demand in the underlying complaints states, "WHEREFORE, Plaintiff prays for judgment in an amount equal to the total balance of accounts listed in Exhibit "A," *plus Court filing fees in the amount of Sixty Dollars ($60), together with interest at the maximum legal rate from the date of judgment, for costs*, attorney fees, and all other equitable relief this Court may

had the legal capacity or the authority to commence or maintain a debt collection action against the class members, as discussed in Sections IV.B.1.a. and IV.B.1.d., *supra*, Defendants violated 15 U.S.C. § 1692f when they demanded payment for costs, fees, and interest.[33]

### 3.  Actual Damages Under the FDCPA

Plaintiffs argue that they are entitled to summary judgment on the issue of actual damages calculation.  Section 1692k states that any debt collector who violates the FDCPA with respect to any person is liable to such person for: (1) any actual damages sustained as a result of the violation; (2) statutory damages; and (3) costs and reasonable attorney fees.  See 15 U.S.C. § 1692k(a).  To determine the amount of liability in a class action, the court considers "the frequency and persistence of non-compliance by the debt collector, the nature of such non-compliance, the resources of the debt collector, the number of persons adversely affected, and the extent to which the debt collector's non-compliance was intentional."

Plaintiffs seek summary judgment that the amount of actual damages recoverable includes all pecuniary and out-of-pocket losses, and damages for anxiety, emotional suffering, embarrassment, and distress.[34]  In decisions awarding actual damages for emotional distress, the court has found that the illegal debt collection practice was extreme and outrageous.  *See e.g., Boyce v. Attorney's Dispatch Serv.*, Case No. C-39-94-347, 1999 WL 33495605, at *1 (S.D.

---

deem just and proper." (emphasis added).

[33]The Fosters contend that Defendants violated this provision because, when Mr. Foster made his $500 installment payment to DBS, $60 was applied to reimbursing D.B.S. for "costs." They point out that D.B.S. also claimed a right to payment for judgment interest.  After the municipal court vacated its default judgment entry against the Fosters, Defendants retained Mr. Foster's $500 payment, even though Defendants could not have collected court costs or interest from the Fosters.

[34]Defendants do not address this argument in their memoranda contra.

Ohio 1999) (awarding actual damages for emotional distress; "Of the more than 100 cases under the FDCPA and the OCSPA that have been filed with this Court, this particular lawsuit involves the most egregious conduct by any defendant"); *Venes v. Prof'l Serv. Bureau, Inc.*, 353 N.W.2d 671,674–75 (Minn Ct. App. 1984).

The Court finds, as a matter of law, that there is a genuine issue of material fact as to whether Defendants' FDCPA violations rise to the level of extreme and outrageous conduct to justify an award of actual damages for mental distress for all of the class members.  Therefore, the Court **DENIES** Plaintiffs' Motion for Partial Summary Judgment on this issue.

### C.  15 U.S.C. § 1692k(c) –  Bona Fide Error Defense

Even though the Court finds that Defendants violated subsections of section 1692e and 1692f, Defendants may escape liability if they can prove that they can show "by a preponderance of the evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error."  15 U.S.C. § 1692k(c); *Edwards v. McCormick*, 136 F. Supp. 2d 795, 800 (S.D. Ohio 2001).  Both Defendant Coffman and Defendant Dickerson assert this affirmative defense.[35]

---

[35]Defendants, relying on the decision in *Taylor v. Luper, Sheriff & Niedenthal Co., L.P.A*, 74 F. Supp.2d 761 (S.D. Ohio 1999) (Graham, J.), argue that the bona fide error defense applies to errors of law.  This Court, however, continues to adhere to the rule it set forth in a previous decision, which is still recognized as good law, that "the bona fide error defense applies only to clerical errors."  *Edwards v. McCormick*, 136 F. Supp. 2d at 800 (citing *Smith v. Transworld Sys., Inc.*, 953 F.2d 1025, 1034 (6th Cir. 1992)).

<u>1.  Defendant Coffman's Bona Fide Error Defense</u>[36]

To support his entitlement to the bona fide error defense, the only evidence Coffman

submits is his own affidavit, which sets forth his belief that his actions did not violate the

FDCPA.[37]  Plaintiffs claim that the Court should disregard Coffman's affidavit because it is not

in the proper form.

Rule 56(e) of the Federal Rules of Civil Procedure, in relevant part, provides:

---

[36]Defendant Coffman asserts five separate grounds for application of the FDCPA's bona fide error defense: (1) that he believed that neither O.R.C. § 1329.01 et seq. nor the case law interpreting it required the re-registration of a change in ownership of the name "D.B.S. Collection Agency"; (2) that he and his employee, Randy Goddard, advised and counseled D.B.S. about the need to take assignments on each debt collected, and on the proper form of such assignments as required by § 1319.12; (3) that he believed it was appropriate and legal to file civil actions jointly against a husband and wife for the debt of only one spouse, pursuant to *Ohio State Univ. Hosp. v. Kinkaid*, 549 N.E.2d 517 (Ohio 1990); (4) that he believed that it was not unlawful for an attorney to request an award of attorney fees, court costs, or interest in a debt collection complaint the files on behalf of his client; and (5) that he believed Ohio law permitted a judgment creditor to pursue garnishment or attachment proceedings on their own.

[37]For example, paragraph 6 of Coffman's affidavit states:

> Based on the legal research and analysis that I or a licensed,
> competent attorney at my law firm conducted as part of the
> maintenance of procedures reasonably adapted in my law office to
> avoid any such errors that would cause any unintentional violation
> of state or federal law, I concluded, and therefore held the belief,
> that Kathy Dickerson and D.B.S. are <u>not</u> required by Ohio Revised
> Code § 1329.01 et seq. or the case law interpreting it to re-register
> the fictitious name "D.B.S. Collection Agency" with the Ohio
> Secretary of State after the previous user of this fictitious name
> assigned the right to use it to Kathy Dickerson as part of the transfer
> of ownership of the D.B.S. business and prior to bringing a civil
> action under this registered fictitious name.  If my belief concerning
> the interpretation of ORC § 1329.01 et seq. resulted in the violation
> of any law, which I deny, then that violation was not intentional but
> resulted from a bona fide error in interpreting Ohio law[.]

> Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein. . . .  When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial.  If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

Fed. R. Civ. P. 56(e); *see also F.R.C. Int'l, Inc. v. United States*, 278 F.3d 641, 643 (6th Cir. 2002) ("It is well settled that courts should disregard conclusions of law (or "ultimate fact") found in affidavits") (citing *A.L. Pickens Co., Inc. v. Youngstown Sheet & Tube Co.*, 650 F.2d 118, 121 (6th Cir. 1982)); *Mitchell v. Toledo Hospital*, 964 F.2d 577, 584-85 (6th Cir. 1992) ("Even if the Court were to consider the Affidavit, the statements contained therein are nothing more than rumors, conclusory allegations and subjective beliefs which are wholly insufficient evidence to establish a claim").

Here, Coffman's affidavit is not sufficient evidence to satisfy his burden of proving an entitlement to the bona fide error defense.  While Coffman is competent to speak to the practices conducted at his law office, his opinions as to the ultimate legal questions – whether the violation was not intentional, whether the violation resulted from a bona fide error, and whether he maintained procedures reasonably adapted to avoid any such error – are not entitled to any weight.  The Court, therefore, disregards Coffman's affidavit to the extent it contains legal conclusions and subjective beliefs.  Because Coffman does not offer any additional evidence to support his alleged entitlement to the bona fide error defense, the Court finds Coffman's claim

fails due to a lack of evidence. Therefore, the Court **DENIES** Coffman's Motion for Summary Judgment on his bona fide error defense.

2. Defendant Dickerson's Bona Fide Error Defense

Defendant Dickerson's claim of bona fide error relies solely upon her contention that she "relied upon the advice of her counsel, Ward Coffman, with respect to the suits and issues about which Plaintiffs complain." According to Plaintiffs, this single assertion, by itself, does not shield Dickerson from FDCPA liability because it does not address the three elements Defendant Dickerson must prove to be entitled to the FDCPA's bona fide error defense.

As the Court stated, the proponent of the bona fide error defense must prove each element of that claim. Defendant Dickerson does not even attempt to prove the first element of the bona fide error defense – that the violations were not intentional.[38] In any event, a debt collector's reliance on the inaccurate advice of its attorney is not sufficient to prove a bona fide error defense under the FDCPA.[39] *See Sibley v. Firstcollect, Inc.*, 913 F. Supp. 469, 473 (M.D.

---

[38]Courts consistently have found that systematic errors are not protected by the bona fide error defense because they are not unintentional. *See, e.g., Martinez v. Albuquerque Collection Services, Inc.*, 867 F. Supp. 1495, 1503 (D. N.M. 1994) (purpose of bona fide defense "is not to shield collectors from liability for systematic errors or abuses"); *Newman v. Checkrite California, Inc.*, 912 F. Supp.1354, 1373 (E.D. Cal. 1995) (bona fide error defense "is intended to protect only those debt collectors who have done all they can to avoid violations of the federal statute," not those who implement routine, but illegal, office procedures for collection").

[39]In *Sibley v. Firstcollect, Inc.*, a district court rejected the debt collector's bona fide error defense under a similar argument, explaining:

> That Firstcollect asked its outside counsel twice in the space of ten months to check whether it became required to be licensed in the states in which it operated, is not evidence of 'procedures reasonably adapted to avoid such error' but, rather, evidence of the error itself. Firstcollect, however, presents no evidence that it had a system in place to protect it from errors in legal advice. For

La. 1995).  Because Dickerson has not proved each of the elements of the bona fide defense, the

Court cannot apply it to immunize her from FDCPA liability.  Thus, the Court **DENIES**

Dickerson's Motion for Summary Judgment on her claim of the bona fide error defense.

### D.  OCSPA Claims

Plaintiffs seek summary judgment on their OCSPA claims.  The OCSPA provides that

"[n]o supplier shall commit an unfair or deceptive act or practice in connection with a consumer

transaction.  Such an unfair or deceptive act violates this section whether it occurs before,

during, or after the transaction."  OHIO REV. CODE § 1345.02.  Plaintiffs contend that the facts of

this case warrant separate violations of the OCSPA.

### 1.  Whether the OCSPA Applies

As a preliminary matter, all Defendants assert that, in many of the class members' cases,

there was no "consumer transaction"[40] because the debts arose from physician-patient

---

example, Firstcollect did not routinely ask for second opinions or
require its attorney to do frequent surveys of the applicable law.

913 F. Supp. 469, 473 (M.D. La. 1995).

[40]Under the statute, the term "consumer transaction" means,

a sale, lease, assignment, award by chance, or other transfer of an
item of goods, a service, a franchise, or an intangible, to an
individual for purposes that are primarily personal, family, or
household, or solicitation to supply any of these things. 'Consumer
transaction' does not include transactions between persons, defined
in sections 4905.03 and 5725.01 of the Revised Code, and their
customers; transactions between certified public accountants and
public accountants and their clients; transactions between attorneys,
physicians, or dentists and their clients or patients; and transactions
between veterinarians and their patients that pertain to medical
treatment but not ancillary services.

-40-

transactions, and as such, Defendants are exempt from the OCSPA.[41]  Plaintiffs argue that the physician-patient exemption does not apply to Defendants.

The OCPA's physician exemption in the definition of "consumer transaction" is narrowly construed, and Ohio courts have rejected its application to non-physicians.  *See Summa Health Sys. v. Viningre*, 749 N.E.2d 344, 356 (Ohio Ct. App. 9th Dist. 2000) ("While transactions with physicians are exempted from the CSPA, a transaction between a service provider such as a hospital and the consumer is not clearly exempted."); *Elder v. Fischer*, 717 N.E.2d 730, 734–35 (Ohio Ct. App. 1st Dist. 1998) (holding that physicians were specifically excluded from the OCSPA, but hospitals were not so they must abide by the OCSPA); *Thorton v. Meridia Suburban Hosp.*, 1991 WL 244206, at *1 (Ohio Ct. App. 8th Dist. Nov. 21, 1991) (same).  In this case, both Defendants are non-physicians.  Plaintiffs do not seek relief here from any physician, as that term is contemplated by the OCSPA.  Therefore, neither Defendant can assert the physician exemption successfully.[42]

---

OHIO REV. CODE § 1345.01(A).

[41]According to Defendant Coffman, DBS filed a state court complaint against 989 class members who owed money to physicians.

[42]Even if the Court permitted derivative use of the physician-patient exemption, which it does not, Defendants would not qualify for its protection because D.B.S.' "clients" – including Orthopedic Associates of Zanesville, Inc., Perry County Family Practice, Inc., and Muskingum Emergency Physicians, Inc. – are medical service providers, not physicians.

Next, Dickerson claims, without much explanation, that the OCSPA does not apply to her because she is not a "supplier"[43] under the statute.[44]  Ohio courts have found repeatedly that the OCSPA governs defendants like D.B.S. and Dickerson.  *See State ex rel. Celebrezze v. United Research, Inc.*, 482 N.E.2d 1260, 1262 (9th Dist. 1984) (holding that a collection agency who filed suit against debtors is a "supplier"); *State ex rel. Celebrezze v. Scandinavian Health Spa, Inc.*, Case No. CV863-1158, 1986 WL 363150 (Ohio C.P. March 31, 1986) (finding that a company engaging in the business of collecting consumer debts is a "supplier"); *see also Schroyer v. Frankel*, 197 F.3d 1170, 1177 (6th Cir. 1999) (holding that "the definition of 'supplier' under the OCSPA is substantially broader than the definition of 'debt collector' under the FDCPA").  Under well-settled Ohio and federal case law, Dickerson and D.B.S. qualify as "suppliers" under the OCSPA because they are engaged in the business of collecting consumer debts.

## 2.  Merits of OCSPA Claims

Having established that the OCSPA applies to Defendants in this case, the Court finds that their debt collection practices constitute deceptive acts under the OCSPA for the reasons set forth above in Section IV.B., *supra*.[45]  Furthermore, the Court finds that Defendants are not

---

[43]Under the statute, the term "supplier" means "a seller, lessor, assignor, franchisor, or other person engaged in the business of effecting or soliciting consumer transactions, whether or not the person deals directly with the consumer."  OHIO REV. CODE § 1345.01(C).

[44]After setting forth the statutory definitions of the terms, Defendants D.B.S. and Dickerson merely state that "[i]n the present case, Ms. Dickerson (D.B.S.) was not a 'supplier.'" Defendants DBS and Dickerson do not cite a single case to support their proposition, nor do they offer any factual development to support this bare legal conclusion.  The Court, too, will dispose of this issue in brief fashion.

[45]While the Court holds that Defendants debt collection practices constitute violations of the FDCPA and the OCSPA in this case, it does not mean to suggest that a violation of the

entitled to the bona fide error defense embodied in Ohio Revised Code § 1345.11(A)[46] for the same reasons Defendants are not entitled to the bona fide error defense in 15 U.S.C. § 1692k(C). *See* Section IV.C., *supra*. Accordingly, the Court **GRANTS** Plaintiffs' Motion for Partial Summary Judgment on their OCSPA claims, **DENIES** Coffman's Motion for Summary Judgment on those claims, and **DENIES** Dickerson's Motion for Summary Judgment on those claims.

## E. Common Law Fraud Claim

Defendants Coffman and Dickerson contend that they are entitled to summary judgment on Plaintiffs' common law fraud claims. Under Ohio law, a claim of fraud requires a plaintiff to prove: (1) a representation or, where there is a duty to disclose, concealment of a fact; (2) which is material to the transaction at hand; (3) made falsely, with knowledge of its falsity, or with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred; (4) with the intent of misleading another into relying upon it; (5) justifiable reliance upon the representation or concealment; and (6) a resulting injury proximately caused by the reliance." *Cohen v. Lamko, Inc.*, 462 N.E.2d 407, 409 (Ohio 1984) (quoting *Friedland v. Lipman*, 429

---

FDCPA is a violation of the OCSPA in all cases. Ohio courts have not spoken in unison on the issue of federal regulatory statute incorporation. *See United Research, Inc.*, 482 N.E.2d at 1261–62 (implying that the distant forum prohibition of the FDCPA is incorporated into Ohio Rev. Code § 1345.02(C)); *Scandinavian Health Spa, Inc.*, 1986 WL 363150, at *3 (finding that "[a] violation of 15 U.S.C. § 1692d is a violation of O.R.C. § 1345.02(A)"); *but see Celebreeze v. Fred Godard Ford, Inc.*, 500 N.E.2d 881, 883–84 (Ohio Ct. App. 9th Dist. 1985) (holding that a violation of the Truth in Lending Act is not a violation *per se* of the OCSPA).

[46]Section 1345.11(A) provides that "if a supplier shows by a preponderance of the evidence that a violation resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adopted to avoid the error, no civil penalties shall be imposed against the supplier." *See* Ohio Rev. Code § 1345.11(A).

N.E.2d 456 (Ohio Ct. App. 1980)).  Plaintiffs claim that Defendants committed fraud by representing that they had the capacity to bring an action in municipal court as "D.B.S. Collection Agency" when they did not, and that they knew or should have known of the falsity of this statement.[47]  Plaintiffs also assert that they relied on this false statement to their detriment.

Dickerson claims, without supporting authority, that she is entitled to summary judgment on Plaintiffs' fraud claims because Plaintiffs have no evidence that any Defendant made any false statement "with knowledge of its falsity" or with "utter disregard and recklessness." Dickerson also claims that Plaintiffs cannot show that she had an "intent" to mislead them.

Coffman briefly argues that he is entitled to summary judgment under the fraud claim because he has never been in an organization with co-defendants for the purpose of collecting debts against consumers.

The Court finds, however, that both Defendants fail to meet their initial burden of identifying those portions of the record that establish an absence of a genuine issue of material fact.  *See Chao v. Hall Holding Co., Inc.*, 285 F.3d 415, 424 (6th Cir. 2002) ("The moving party bears the initial responsibility of informing the Court of the basis for its motion and identifying those portions of the record that establish the absence of a genuine issue of material fact.") (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).  For that reason, the Court **DENIES** Dickerson's Motion for Summary Judgment, with respect to Plaintiffs' common law fraud claims, and **DENIES** Coffman's Motion for Summary Judgment, with respect to Plaintiffs' common law fraud claims.

---

[47]  The Plaintiffs have not alleged that their fraud claim is premised on Dickerson's alleged telephonic statement to Mr. Foster that she would accept his $500 installment payments in lieu of maintaining the municipal court action against him.

### F.  OPCA Claim

Defendants seek summary judgment on Plaintiffs' OCPA claims.  Plaintiffs have alleged a claim against the Defendants for violation of the OPCA, Ohio Rev. Code § 2923.31, *et seq.*, which is patterned after the Federal Racketeering Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961, *et seq.*  Ohio courts have found that the elements for a OPCA violation are the same as those for a RICO claim.  *See Universal Coach, Inc. v. New York City Transit Auth., Inc.*, 629 N.E.2d 28, 32 (Ohio Ct. App. 1993); *see also State v. Schlosser*, 681 N.E.2d 911, 914-15 (Ohio 1997) (finding that both the federal and state statutes require proof of an "enterprise").  Thus, a successful OPCA claim must prove: "(1) conduct of the defendant which involves the commission of two or more of specifically prohibited state or federal criminal offenses; (2) the prohibited criminal conduct of the defendant constitutes a pattern of corrupt activity; and (3) the defendant has participated in the affairs of an enterprise or has acquired and maintained an interest in or control of an enterprise."  *Universal Coach, Inc.*, 629 N.E.2d at 32 (citing *Sedima S.P.R.L. v. Imrex Co.*, 473 U.S. 479 (1985)).  Under the OPCA, a "pattern of corrupt activity" consists of "two or more incidents of corrupt activity, whether or not there has been a prior conviction, that are related to the affairs of the same enterprise, are not isolated, and are not so closely related to each other and connected in time and place that they constitute a single event."  OHIO REV. CODE § 2923.31(E).  The OPCA defines an "enterprise" as "any individual, sole proprietorship, partnership, limited partnership, corporation . . . or other legal entity, or any organization, association, or group of persons associated in fact although not a legal entity.  'Enterprise' includes illicit as well as licit enterprises."  OHIO REV. CODE § 2923.31(C).

Plaintiffs allege that Defendants, two individuals and a sole proprietorship, have participated in and constituted an association in fact to collect consumer debts allegedly owed to third parties since August 10, 1998. They claim that the enterprise regularly pursued its endeavor by filing approximately ten to twenty Ohio court actions to collect consumer debt each month between August 1998 and March 2001. They contend that the suits commenced and maintained by Defendants are void *ab initio* due to Defendants' lack of legal capacity to bring those suits, based on their failure to properly register D.B.S. after it was transferred to Dickerson. They assert that Defendants' actions constitute a pattern of corrupt activity, in that commencing, maintaining, and collecting on judgments derived from civil suits that are void involves separate occurrences of mail fraud, telecommunications fraud, and theft. Plaintiffs allege that these acts were performed knowingly and in reckless disregard of the Plaintiffs' rights.

Dickerson argues that she is entitled to summary judgment on Plaintiffs' OPCA claim because Plaintiffs cannot point to evidence showing the elements of at least two of the alleged offenses: mail fraud, wire fraud, theft, extortion. According to Defendants, summary judgment is proper because Plaintiffs are unable to satisfy this element. With regard to mail and wire fraud, Dickerson argues that Plaintiffs would have to show that Defendants either participated in a scheme to defraud, used the mail or wires to execute said scheme, knew that the representations were false, and intended to defraud Plaintiffs. Defendants argue that Plaintiffs cannot prove these elements because Dickerson, in her deposition testified that she believed she had valid assignments. Dickerson argues that theft also requires a knowing use of fraudulent means. Finally, with regard to extortion, Dickerson argues that Plaintiffs cannot show that she threatened to expose any private matters as required by Ohio Revised Code § 2905.11.

-46-

Coffman argues that he is entitled to summary judgment under the OPCA claims because he has never been in an organization with co-defendants for the purpose of collecting debts against consumers.

Again, the Court finds that both Defendants fail to meet their initial burden of identifying those portions of the record that establish an absence of a genuine issue of material fact.  *See Chao*, 285 F.3d at 424.  For that reason, the Court **DENIES** Dickerson's Motion for Summary Judgment, with respect to Plaintiffs' OPCA claims, and **DENIES** Coffman's Motion for Summary Judgment, with respect to Plaintiffs' OPCA claims.

### G.  42 U.S.C. § 1983 Claim

Plaintiffs have alleged that Defendants infringed the Plaintiffs' constitutional rights in violation of 42 U.S.C. § 1983.[48]  To prevail on a § 1983 claim, a plaintiff must show that a person acting under color of law deprived him of his rights secured by the United States Constitution or its laws.  *O'Brien v. City of Grand Rapids*, 23 F.3d 990, 995 (6th Cir. 1994).  A private party may be held liable under § 1983 for invoking the aid of state officials to take advantage of a state-created attachment process, the constitutionality of which is being challenged by the plaintiff.  *Lugar v. Edmonson Oil Co.*, 457 U.S. 922, 941-42 (1982).

-----

[48]  The relevant portion of that statute reads:

> Every person who, under color of any statute, regulation, custom, or usage of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress[.]

42 U.S.C. § 1983.

The Fosters allege that Defendants violated their constitutional rights by utilizing an "illegal local practice" to attach the Plaintiffs' household checking account by mailing court orders directly to the Plaintiffs' bank. Specifically, the Fosters assert that Defendants acted in concert with the municipal court clerk's office to utilize a local court practice that denied Plaintiffs the procedural safeguards of notice and a hearing that are guaranteed by Ohio law.

Defendants argue that summary judgment is appropriate because Plaintiffs must assert a constitutional challenge. Because they failed to do so, their claim cannot stand. In the alternative, Coffman invokes a "good faith defense" to 1983 claims arguing that he believed that the one garnishment proceeding in which he participated was done in accordance with all the applicable laws in effect at the time.

Again, the Court finds that both Defendants fail to meet their initial burden of identifying those portions of the record that establish an absence of a genuine issue of material fact. *See Chao*, 285 F.3d at 424. Because Defendants have failed to prove that there are no genuine issues of material fact and that they are entitled to judgment as a matter of law, the Court **DENIES** Dickerson's Motion for Summary Judgment with respect to Plaintiffs' 42 U.S.C. § 1983 claims, and **DENIES** Coffman's Motion for Summary Judgment with respect to Plaintiffs' § 1983 claims.

## V. CONCLUSION

For the foregoing reasons, Plaintiffs' Motion for Partial Summary Judgment is **GRANTED** as to Defendants' liability under the FDCPA and the OCSPA, but **DENIED** as to Plaintiffs' damages calculation. Coffman's Motion for Summary Judgment is **DENIED**, and Dickerson's Motion for Summary Judgment is **DENIED**.

-48-

**IT IS SO ORDERED.**


                                   **___s/Algenon L. Marbley_____**
                                   **ALGENON L. MARBLEY**
                                   **UNITED STATES DISTRICT JUDGE**

**Dated:  December 5, 2006**